# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRUSTEES OF THE IOWA IRON WORKERS HEAVY HIGHWAY DEFINED BENEFIT PENSION FUND, <br><br> TRUSTEES OF THE IRON WORKERS HEAVY HIGHWAY DEFINED CONTRIBUTION PLAN, and <br><br> TRUSTEES OF THE NORTHEAST IOWA IRON WORKERS LOCAL 89 JOINT APPRENTICESHIP TRAINING COMMITTEE TRUST, <br><br>     Plaintiffs, <br><br> vs. <br><br> CALACCI CONSTRUCTION CO. INC., and <br><br> MPCC, LLC d/b/a INTERSTATE REINFORCING STEEL, <br><br>     Defendants. | No. 19-CV-66-LRR-MAR <br><br><br> **ORDER** |

_____

The matter before the Court is the Motion to Set Aside Default Entry filed by Defendants Calacci Construction Co., Inc. ("Calacci") and MPCC, LLC filed September 23, 2019. (Doc. 11.) Plaintiffs Trustees of the Iowa Iron Workers Heavy Highway Defined Benefit Pension Fund, Trustees of the Iron Workers Heavy Highway Defined Contribution Plan, and Trustees of the Northeast Iowa Ironworkers Local 89 Joint

Apprenticeship Training Committee Trust ("Plaintiffs") filed their resistance on September 27, 2019. (Doc. 13.)

## I.  FACTS

Plaintiffs filed their Complaint on June 20, 2019. (Doc. 1.) Plaintiffs allege Defendants breached terms of a collective bargaining agreement that required them to make contributions to the Plaintiff entities. Personal service of the Summons and Complaint was made on June 27, 2019 by service upon John Calacci, the owner, operator and president of Calacci Construction Co., Inc. and MPCC, LLC d/b/a Interstate Reinforcing Steel ("IRS"). (Doc. 11-2 at 2 ¶ 1.) Defendants were required to move or plead on or before July 18, 2019, but failed to do so. On August 12, 2019 Plaintiffs applied for entry of a default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 7.) On August 13, 2019, the Clerk of Court entered such a default against Defendants. (Doc. 8.) On September 9, 2019 Plaintiffs filed a Motion for Default Judgment. (Doc. 9.) Approximately two weeks later (and more than a month after a default had been entered), Defendants filed the instant motion to set the default aside.

## II.  DISCUSSION

### A.  *The Parties' Positions*

Defendants seek to set aside the default, arguing that, pursuant to Federal Rule of Civil Procedure 60(b), there is good cause to do so. Defendants argue that because a default judgment has not yet been entered a more lenient standard for good cause applies. Here, Defendants argue they are not blameworthy or culpable but are, at worst, ignorant of the legal process. Mr. Calacci, states that he believed his partial payment and efforts to resolve pending issues with Plaintiffs put the lawsuit "on hold." (Doc. 11-2 ¶ 4.) Mr. Calacci states he did not forward the Complaint to his lawyers because he believed he was resolving the problem by himself in communication with Plaintiffs' attorney. (*Id.*

¶¶ 3-5.) Defendants contend they have a meritorious defense, which they do not describe other than to indicate that they "disagree with Plaintiffs regarding the amounts Plaintiffs allege Defendants owe the various funds." (Doc. 11-1 at 3.) Defendants further contend Plaintiffs will not be prejudiced if the Court allows the suit to proceed on its merits. (*Id.* at 4.)

Plaintiffs contend the excuses Defendants have offered for failing to timely file an Answer are implausible. First, Plaintiffs point out that Mr. Calacci is no neophyte with respect to litigation. Plaintiffs offer a list of cases where Mr. Calacci or his businesses had been sued in state and federal courts since August 8, 2018, including instances where he or his business had been defaulted. (Doc. 13-1.) There are nine pending cases and eight closed cases during this time. (*Id.*) Plaintiffs also point to several lawsuits, including ongoing lawsuits, where Mr. Calacci's businesses are represented by various lawyers. (Doc. 13 at 2.)

The affidavit of Plaintiffs' counsel, Jennifer Germaine, paints a different picture of what actions Mr. Calacci took after having been served with the Complaint. Her affidavit reflects on his veracity, as well as on the reasonableness of Mr. Calacci's belief the lawsuit "was on hold." (Doc. 13-2.) Ms. Germaine reports she has not had any contact with Mr. Calacci. Rather, more than a month after Mr. Calacci was served with the Complaint, Ms. Germaine was contacted by Miron, a contractor who wanted to employ IRS on a project and who wanted to verify whether IRS was current on their payments to Plaintiffs. (*Id.* at 2 ¶ 3.) In the subsequent email exchange involving the contractor's representative, the business manager for the Ironworkers Local 89 Union, and Ms. Germaine, a joint check agreement was established that permitted Miron to use IRS and its union ironworkers for the project. (*Id.* ¶ 4.) Mr. Calacci was not involved in communications with Ms. Germaine in connection with this joint check agreement.

(*Id.* ¶ 5.) Ultimately, IRS was able to complete the work for Miron, but the instant litigation was not discussed. (*Id.* ¶6.)

Plaintiffs contend Defendants have not shown good cause for setting aside the default. First, they contend that because Mr. Calacci has experience with litigation and is represented by multiple attorneys, he had no reasonable basis to believe the case would be delayed because of his partial payment. Plaintiffs further contend there is no meritorious defense because the damages sought are based on hours worked and reported to the Plaintiffs by the Defendants, themselves, at the contribution rates set forth in the collective bargaining agreement. Finally, Plaintiffs contend they will be prejudiced if the default is set aside because of the numerous cases pending against Defendants, presumably as shown in Exhibit 1. Plaintiffs desire to proceed with collection before Defendants are insolvent.

**B.    *Applicable standards***

Defendants do not argue that the default was improperly entered or that it had not, in fact, defaulted because of its failure to timely move or plead. Therefore, the principal question is whether there is "good cause" to set aside the default entered against Defendants. The Court may "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).; *see also Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). The showing necessary to set aside a default entry is not as stringent as that necessary to vacate a default judgment. *Id*. at 784. The Eighth Circuit Court of Appeals has explained

> [t]here is a "judicial preference for adjudication on the merits," *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993), and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits.

*Id*. To determine whether good cause exists, the Court should weigh "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting

4

party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Id.* (citation omitted); *see also Stephenson v. El–Batrawi,* 524 F.3d 907, 911-12 (8th Cir. 2008). The Court focuses heavily on the blameworthiness of the defaulting party and seeks to "distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *Dayton Elec.*, 140 F.3d at 784. The Eighth Circuit notes it has "often granted Rule 55(c) and Rule 60(b) relief for marginal failures when there were meritorious defenses and an absence of prejudice." *Id.* (citations omitted).

C. *Defendants' culpability*

Defendants claim they are not blameworthy. Rather, they state, "At most, they are guilty of not understanding the legal process." (Doc. 11-1 at 3.) However, Mr. Calacci's explanation of how Defendants defaulted does not withstand scrutiny. He states that after having been served, he "did not take any other action with regard to the above-captioned lawsuit because [he] intended to work to resolve this matter directly with Plaintiffs." (Doc. 11-2 at 2 ¶ 3.) The Complaint in this matter seeks to recover delinquent contributions that had accrued through April 2019. (Doc. 1 ¶ 16.) As Ms. Germaine's affidavit makes clear, the joint check agreement was initiated by Miron to enable Defendant IRS to do work sometime after July 31, 2019, not to pay off existing liability. While Mr. Calacci does not allege Plaintiffs made any promises or representations about putting this matter "on hold," the genesis and nature of the joint check agreement makes it implausible he could have concluded the lawsuit was "on hold." Thus, Mr. Calacci's statement seems less like a candid and reasonable explanation of how the default occurred and more like the best excuse he could come up with. As such, the Court finds Defendants' conduct, while not the product of contumacious or intentional delay, is not altogether blameless. Therefore, this factor weighs slightly against Defendants.

*D.     Whether Defendants had a meritorious defense*

Defendants say very little about what they assert their meritorious defense might be. Defendants assert that they "disagree with Plaintiffs' interpretation of the various agreements, and, thus, disagree with Plaintiffs regarding the amounts Plaintiffs allege Defendants owe the various funds. Defendants plan to contest the case on the merits based on its [sic] interpretation of the contract language." (Doc. 11-1 at 3.) This recitation provides little to support their contention that they have a meritorious defense. Defendants merely assert they disagree with Plaintiffs' interpretation of certain contractual language. This assertion is about as insubstantial as a defense can be. Defendants do not assert a specific defense such as that Plaintiffs have identified the incorrect parties, that there was some mistake in determining the hours subject to the agreement or that its payments had been misapplied. Defendants do not point to portions of the collective bargaining agreement that they claim has been erroneously interpreted or explain how Plaintiffs may be mistaken.

Ms. Germaine's affidavit suggests there is no meritorious defense. Moreover, the course of dealing after service of the Complaint suggests the defense has little merit. After Mr. Calacci had been served with the Complaint he nevertheless negotiated, or permitted Miron to negotiate, joint check agreements that paid Plaintiffs based on the same terms with which Defendants now claim to disagree.

Defendant's bare assertion that it disagrees with Plaintiffs' interpretation of the collective bargaining agreement is distinguishable from the meritorious defense asserted in *Dayton Electric* which held:

> The district court concluded that Dayton Electric satisfied the meritorious defense factor when it presented an affidavit by the Grainger employee who inspected the fan and motor that allegedly caused the fire opining they did not match Grainger or Dayton Electric parts. We agree. Johnson argues this conclusion is contradicted by her expert, but the issue is whether the proffered evidence "would permit a finding for the defaulting party," not

6

whether it is undisputed. *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); 10 Wright, Miller, and Kane at § 2697.

140 F.3d at 785. Defendants' allegedly meritorious defenses amounts to no more than a general denial. In *Dayton Electric*, the party seeking to set aside the default came forward with more than a mere denial when it presented a basis that would "permit a finding for the defaulting party." *Id*. Defendants have not done so. If anything, the evidence shows Defendants do not have a meritorious defense. After Defendants were served, they continued to make payments to the Plaintiff entities pursuant to the joint check agreement arranged by Miron. There is no evidence that Defendants are doing anything other than paying amounts consistent with Plaintiffs' interpretation of the collective bargaining agreement. Therefore, this factor weighs against setting aside the default.

### E. Prejudice to Plaintiffs

Prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits. *Id*. *Dayton Electric* held that "setting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery or greater opportunities for fraud and collusion.'" *Id*. (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). *Berthelsen* considered the possibility that a plaintiff's difficulty in collecting a judgment could form a basis for prejudice. 907 F.2d at 621. However, because the plaintiff had not raised this argument or substantiated it, the court declined to find this was a basis of prejudice. *Id*.

In the case at bar, Plaintiffs have both raised and substantiated the possibility of Defendants' insolvency as a basis for finding prejudice. Plaintiffs point to the numerous cases pending against Defendants, as well as Defendants' inability to pay obligations outstanding against them. Plaintiffs are concerned about collecting on their default judgment before Defendants become insolvent. The Court finds there is evidence in the

record to conclude this concern is more concrete than a mere delay in obtaining a judgment. Therefore, this factor weighs against setting aside the default.

### III. CONCLUSION

Ultimately, the Court is presented with Defendants' conduct, which is neither wholly innocent nor particularly culpable. Defendants have failed to support their assertion of a meritorious defense. In addition, the record presented discloses reasons to believe Plaintiffs would be prejudiced if the default were set aside. Even under the more lenient "good cause" standard, the Court concludes Defendants have not met their burden.

Therefore, Defendants' Motion to Set Aside Default Entry **(Doc. 11) is DENIED. IT IS SO ORDERED this 10th day of October, 2019.**

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa